ELLISON, Respondent, vs. NATIONAL CASUALTY COMPANY, Appellant.

LAMERE and another, Appellants, vs. ELLISON, Respondent.

*November 17—December 15, 1948.*

For the appellants there was a brief by *Gerald T. Flynn* of Racine, and *Sturm, Beyer, Weis & Lawton* of Milwaukee, attorneys, and *Edward J. Kilmurry* of Racine of counsel, and oral argument by *Mr. Flynn.*

For the respondent there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo Vaudreuil.*

HUGHES, J. Ellison was driving north on Highway 42, a three-lane highway between Kenosha and Racine, at a speed of twenty-five miles per hour. LaMere, driving in the same direction at a speed of forty-five miles per hour, overtook the Ellison car and collided with the left rear end. Both automobiles were damaged.

The trial court found that the accident was due solely to the negligence of LaMere in approaching too close before turning out to pass and in failing to blow his horn as required by statute.

Counsel for LaMere contended in the trial court, and here contends, that the physical facts prove that the collision occurred in the middle lane and was caused by the negligence of George Ellison in suddenly swerving to the left and into the middle lane without first ascertaining whether the movement could be made without danger to traffic in the middle lane. The physical facts relied upon are skid marks in the middle traffic lane.

The trial court held that the collision occurred in the east lane and that it preceded the application of the brakes by La-Mere. The court therefore held that the position of the LaMere car at the time it skidded determined nothing.

Appellants ask that this court hold the trial court to have been in error in determining that the place where the accident happened was not a residential area. If it was a residential area, LaMere had no duty to blow the horn. Sec. 85.16 (1), Stats.

Mr. Ellison testified that "This area is built up with houses for a mile or so and houses front on the road right along the way." Elvin Ellison, son of George Ellison, who was riding with his father when the accident occurred, testified, "The roadway is all built up along there with homes."

Sec. 85.10 (28) and (29), Stats., defining business and residence districts, provide:

"(28) *Business district.* The territory contiguous to a highway when fifty per cent or more of the frontage thereon for a distance of three hundred feet or more is occupied by buildings in use for business.

"(29) *Residence district.* The territory contiguous to a highway not comprising a business district where the frontage on such highway for a distance of three hundred feet or more is mainly occupied by dwellings or by dwellings and buildings in use for business."

This accident occurred outside the city limits, and the burden of proof rested upon the party claiming that it was a residence district to establish the fact. The evidence relied upon by appellants falls far short of discharging the burden of proof. If it were a residence district, then the speed of the LaMere car was illegal, and that issue was not urged at the trial, so it seems fair to presume that the parties, as well as the trial court, considered this rural area all through the trial.

Appellants urge that respondent's swerving into the middle lane was negligence and not due to an emergency. As Ellison drove along the highway he observed several small children with their dog, playing on the east shoulder. As he neared the group the dog dashed into the path of his car. The trial court held that if there were any swerving, it was because Ellison was confronted with an emergency.

We need spend no time on this point, because the trial court's finding that the collision occurred in the east lane renders its comment on the swerving and emergency immaterial.

*By the Court.*—Judgments affirmed.